UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HILLSBOROUGH RARE COINS, LLC, | : | CIVIL ACTION NO. 16-916 (MLC) |
| | : | |
| | : | **MEMORANDUM OPINION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ADT LLC, f/k/a ADT SECURITY | : | |
| SERVICES, INC, et al., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**COOPER, District Judge**

 This matter originates from a 2015 heist at Hillsborough Rare Coins, a business

engaged in the selling of rare coins, where three burglars broke in and stole merchandize.

Plaintiff Hillsborough Rare Coins sued Defendant ADT in New Jersey Superior Court,

Somerset County, alleging causes of action related to ADT's provision of an alarm system

and alarm monitoring service.  (Dkt. 1-2.)[1]  Defendant removed the matter to the United

States District Court for the District of New Jersey.  (Dkt. 1.)

 Plaintiff filed an Amended Complaint.  (Dkt. 30).  Defendant filed this motion to

dismiss the Amended Complaint.  (Dkt. 32.)  Plaintiff filed a brief in opposition (dkt. 33), and

---

[1] The Court will cite to the documents filed on the Electronic Case Filing System ("ECF") by the
designation of "dkt."  Pincites reference ECF pagination.

Defendant filed a reply brief (dkt. 35). We have considered these filings, and will resolve the matter without oral argument. See L.Civ.R. 78.1(b).[2]

For the following reasons, we will grant the motion to dismiss in part, dismissing with prejudice as to Count Two, Count Three, and Count Five, and dismissing without prejudice as to Count Four, Count Six, Count Seven, and Count Eight, and deny the motion to dismiss in part as to Count One.

## BACKGROUND

We glean the following background from the allegations in HRC's Amended Complaint, which we accept as true at this stage in the pleadings. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Plaintiff Hillsborough Rare Coins, LLC ("HRC") is a business located in Green Brook, New Jersey, and is engaged in the collection and sale of rare coins. (Dkt. 30 at 2.) In approximately 2001, HRC contracted with Defendant ADT Security Services, Inc. ("ADT")[3] to install an alarm system at the store. (Id. at 3.) HRC has had an ADT burglary alarm system since then. (Id.)

---

[2] HRC attached an affidavit from the store's Managing Member/owner, Victor Fabricatore, and exhibits to its brief in opposition to the motion to dismiss. (Dkt. 33-1.) Generally, when considering a motion to dismiss filed pursuant to Rule 12(b)(6), we may not "consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). A complaint may not be amended by the briefs in opposition to a motion to dismiss. See Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988). We therefore have constrained ourselves to evaluating the allegations in the Amended Complaint, and we have not considered the affidavit provided by HRC in its brief opposing the motion to dismiss. If HRC wishes us to consider these allegations and supporting documents, then HRC must seek leave to file an amended complaint in accordance with the Federal Rules of Civil Procedure and our local court rules.

[3] Now known as ADT LLC. (Dkt. 30 at 2; dkt. 32-2 at 8.)

HRC alleges that a 2006 Sales Proposal/Agreement from ADT contains a signature dated May 7, 2006, purporting to be from Victor Fabricatore, HRC's Managing Member/owner, but was forged by ADT. (Dkt. 30 at 3.)

On September 26, 2014, HRC and ADT entered into a separate contract to upgrade and convert the burglary system to ADT's "Pulse" system. (Id. at 3–4; dkt. 32-3 at 2, 4.) The contract covered "Alarm Monitoring and Notification Services" for burglary at a monthly service charge of $63. (Dkt. 30 at 3; dkt. 32-3 at 4.) HRC contracted for the upgraded system because ADT informed HRC that ADT would immediately contact the police and HRC if the alarm was triggered so that law enforcement could attempt to intervene and stop a possible burglary. (Dkt. 30 at 4.) ADT made this representation to HRC on the day that the contract was signed. (Id.)

The contract contained the following relevant provision:

> **B. Services**
> **2. Signal Receiving and Notification Service.** Signal Receiving and Notification Service shall be provided by ADT if this Contract includes a charge for Service. If an alarm signal registers at ADT's CMC, ADT shall endeavor to notify the appropriate Police or Fire Department and the designated representative of Customer. If a burglar alarm signal or fire signal registers at ADT's CMC, ADT at its sole discretion may endeavor to contact Customer's premises by telephone (or, in the case of a burglar alarm signal only, by Two-Way Voice if such monitoring service has been elected by Customer) to verify that the alarm is not false. Failing to contact Customer promptly or questioning the nature of the response received upon such contact, ADT shall endeavor to notify the appropriate Police Department or Fire Department. Customer agrees that ADT shall have no liability pertaining to any Two-Way Voice communication or its publication. If a supervisory signal or trouble signal registers at ADT's CMC, ADT shall endeavor to notify the designated representative of Customer.

(Dkt. 32-3 at 7.)[4]

On June 1, 2015, at approximately 10:30 p.m., three burglars broke into HRC to steal merchandise from the store. (Dkt. 30 at 4.) The burglars remained in HRC for about three hours. (Id. at 5.) ADT's monitoring station was alerted to the break-in. (Id. at 6–7.) The burglars stole "numerous valuable rare coins" and "other merchandise." (Id. at 5.) They also caused "extensive physical damage" to the HRC store. (Id.)

The burglars cut through the wall of the adjoining business next to HRC to access the rear room in the store. (Id.) They used power tools, such as a cutting wheel and hammer drill, to attempt to cut through the lining to the store's main safe. (Id.) They also cut, or attempted to cut, the ADT alarm panels' cables, before ultimately ripping the alarm system boxes and panels from the wall. (Id.)

Upon the burglars' entry into the store, the ADT alarm system was triggered and the ADT monitoring station was alerted to the entry. (Id.) ADT sent a computer-generated email to HRC stating that the alarm system's "silent panic alarm" had been triggered at 10:36 p.m. because sensors in the front and rear areas of the store alerted. (Id.) HRC did not learn of the email until after the burglary was over because the email was marked as spam and went into HRC's spam folder. (Id. at 5–6.) HRC alleges that pursuant to ADT's contractual promises, HRC had an additional obligation at that time to call both the police and Fabricatore's cell phone. (Id. at 6.) ADT called neither Fabricatore nor the police. (Id.)

---

[4] Although we generally limit our review to the pleadings when evaluating a motion to dismiss, we "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," such as the contract here. See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

An ADT employee called Fabricatore at 11:20 p.m. to alert him that there had been a power outage at the store and that the alarm system was still functioning on a backup battery, and that ADT would inform him if it stopped working. (Id.) According to HRC, these statements were false. (Id.) No power outage occurred at the HRC store, and at the time of the phone call, the burglars had already ripped the alarm system out of the walls. (Id.) At the time, however, HRC believed ADT's representations that there was a power outage but the alarm system was still functioning on a backup battery, that "nothing was wrong," and that ADT would call back if anything else happened. (Id. at 7.)

HRC discovered that its store was burglarized the following morning. (Id.) ADT assigned an investigator who inspected the store and spoke with Fabricatore. (Id.) ADT has not furnished any report or findings to HRC resulting from the investigation. (Id.)

HRC filed suit against ADT in New Jersey Superior Court, Somerset County on December 2, 2015. (Dkt. 1-2.) On February 19, 2016, ADT filed a Notice of Removal to the United States District Court for the District of New Jersey, 28 U.S.C. § 1441, on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a). (Dkt. 1.)

ADT moved to dismiss the Complaint. (Dkt. 11.) We denied the motion without prejudice, and directed HRC to move for leave to file an Amended Complaint. (Dkt. 22.) HRC thereafter filed an Amended Complaint. (Dkt. 30.)

The Amended Complaint alleges: 1) breach of contract; 2) promissory estoppel; 3) equitable estoppel; 4) breach of the implied covenant of good faith and fair dealing; 5) breach of warranty; 6) violation of the New Jersey Consumer Fraud Act; 7) products liability; and 8)

theft/civil conspiracy to commit theft.  (Id. at 7–17.)  ADT filed this motion to dismiss the Amended Complaint.  (Dkt. 32.)

## DISCUSSION

### I.        Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  When evaluating a motion to dismiss, a court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In evaluating the sufficiency of a plaintiff's factual pleadings, a court must take three steps:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citations and quotation marks omitted).  However, "a court need not credit a plaintiff's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007) (quotation omitted).

## II.    Analysis

### A.    Breach of Contract (Count One)

HRC alleges that ADT breached the contract between them by promising to immediately notify HRC and the police if the alarm system triggered at the store, and then failing to do so on June 1, 2015, the night of the burglary.  (Dkt. 30 at 8.)

ADT asks that we enforce the insurer provision of the contract, through which, according to ADT, HRC acknowledged that ADT was not its insurer and HRC would look exclusively to its insurance provider to recover for any loss, such as a burglary.  (Dkt. 32-2 at 17–18; dkt. 35 at 8–10.)  Alternatively, if we were to deny the motion to dismiss and allow Count One to proceed, ADT argues that we should enforce the contract provision limiting recoverable damages to $1,000 and dismiss with prejudice Count One to the extent that it seeks damages in excess of that limit.  (Dkt. 32-2 at 20–21 (citing dkt. 32-3 at 3); dkt. 35 at 10–11.)

HRC argues that the insurer provision and damages limitation clauses of the contract are unenforceable because the print was so small and inconspicuous as to be effectively hidden from a reader and that the clauses are void as unconscionable because they would effectively eliminate any liability for the services ADT agreed to provide.  (Dkt. 33 at 13–17.) According to HRC, the insurer clause is further inapplicable because by its language, it would only apply if HRC had insurance, which it did not.  (Id. at 17–18.)  HRC argues that the claims are not against ADT as insurer or guarantor to protect it from burglary, but rather for

failing to call HRC or law enforcement after the alarm was triggered as contracted to.[5]  (Dkt. 33 at 17.)  HRC also argues that the damage limitation clause violates New Jersey law because it is a "reverse liquidated damages" provision.  (Id. at 18–19.)

The contract provisions at issue state:

**E.     LIMITATIONS ON LIABILITY.**

**1.     ADT IS NOT AN INSURER. THE AMOUNTS ADT CHARGES CUSTOMER ARE NOT INSURANCE PREMIUMS. SUCH CHARGES ARE BASED UPON THE VALUE OF THE SERVICES, SYSTEM AND EQUIPMENT ADT PROVIDES AND ARE UNRELATED TO THE VALUE OF CUSTOMER'S PROPERTY, ANY PROPERTY OF OTHERS LOCATED IN CUSTOMER'S PREMISES OR ANY RISK OF LOSS ON CUSTOMER'S PREMISES.**

**2.     ADT'S SERVICES, SYSTEMS AND EQUIPMENT DO NOT CAUSE AND CANNOT ELIMINATE OCCURRENCES OF THE EVENTS THEY ARE INTENDED TO DETECT OR AVERT. ADT MAKES NO GUARANTY OR WARRANTY, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, THAT THE SERVICES, SYSTEM OR EQUIPMENT SUPPLIED WILL DETECT OR AVERT SUCH EVENTS OR THE CONSEQUENCES THEREFROM.  ACCORDINGLY, ADT DOES NOT UNDERTAKE ANY RISK THAT CUSTOMER'S PERSON OR PROPERTY, OR THE PERSON OR PROPERTY OF OTHERS, MAY BE SUBJECT TO INJURY OR LOSS IF SUCH AN EVENT OCCURS. THE ALLOCATION OF SUCH RISK REMAINS WITH CUSTOMER, NOT ADT. INSURANCE, IF ANY, COVERING SUCH RISK SHALL BE OBTAINED BY CUSTOMER. ADT SHALL HAVE NO LIABILITY FOR LOSS, DAMAGE OR INJURY DUE DIRECTLY OR INDIRECTLY TO EVENTS, OR THE**

---

[5] We note that ADT and HRC also make the same arguments regarding the insurer provision with respect to Counts Two, Three, Four, and Five.  Because we resolve those claims on different grounds, we only discuss the insurer provision as it relates to the breach of contract claim.

**CONSEQUENCES THEREFROM, WHICH THE SYSTEM OR SERVICES ARE INTENDED TO DETECT OR AVERT. CUSTOMER SHALL LOOK EXCLUSIVELY TO ITS INSURER AND NOT TO ADT TO PAY CUSTOMER IN THE EVENT OF ANY SUCH LOSS, DAMAGE OR INJURY. CUSTOMER RELEASES AND WAIVES FOR ITSELF AND ITS INSURER ALL SUBROGATION AND OTHER RIGHTS TO RECOVER FROM ADT ARISING AS A RESULT OF PAYING ANY CLAIM FOR LOSS, DAMAGE OR INJURY OF CUSTOMER OR ANOTHER PERSON.**

**3.     IF NOTWITHSTANDING THE PROVISIONS OF THIS PARAGRAPH E, ADT IS FOUND LIABLE FOR LOSS, DAMAGE OR INJURY UNDER ANY LEGAL THEORY DUE TO A FAILURE OF THE SERVICES, SYSTEM OR EQUIPMENT IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $1,000, WHICHEVER IS GREATER, AS AGREED UPON DAMAGES AND NOT AS A PENALTY, AS CUSTOMER'S SOLE REMEDY. THIS WILL BE THE SOLE REMEDY BECAUSE IT IS IMPRACTICAL AND EXTREMELY DIFFICULT TO DETERMINE THE ACTUAL DAMAGES, IF ANY, WHICH MAY RESULT FROM ADT'S FAILURE TO PERFORM ANY OF ITS OBLIGATIONS UNDER THIS CONTRACT. IF CUSTOMER REQUESTS, ADT MAY ASSUME GREATER LIABILITY BY ATTACHING A RIDER TO THIS CONTRACT STATING THE EXTENT OF ADT'S ADDITIONAL LIABILITY AND THE ADDITIONAL CHARGES CUSTOMER WILL PAY FOR ADTS ASSUMPTION OF SUCH GREATER LIABILITY. HOWEVER, SUCH ADDITIONAL CHARGES ARE NOT INSURANCE PREMIUMS, AND ADT IS NOT AN INSURER EVEN IF IT ENTERS INTO SUCH A RIDER.**

(Dkt. 32-3 at 3; dkt. 33-3 at 4.)

We find that HRC has stated a plausible claim of breach of contract that would not be subject to the insurer provision.  HRC has stated that under the contract, ADT had an

obligation to immediately call Fabricatore and the police if the alarm was triggered. HRC is not seeking coverage from ADT for the store's losses. Rather, according to HRC, the alarm was triggered but no phone call followed. Therefore, ADT broke their contractual obligation. These allegations are sufficient to survive a motion to dismiss. See Iqbal, 556 U.S. at 678. ADT remains free to raise the allocation of risk provision as an affirmative defense in the Answer, and HRC can challenge the provision's enforceability.

To the extent that ADT argues that we should dismiss HRC's claims that seek damages over $1,000, we decline to do so at this time. ADT cites no case within our jurisdiction where such a provision was enforced at the Rule 12(b)(6) motion to dismiss stage. In fact, in numerous cases cited by ADT, the court explicitly declined to resolve questions surrounding a damages limitation provision at such an early stage in the litigation. See, e.g., Adler Engineers, Inc. v. Dranoff Properties, Inc., No. 14-921, 2014 WL 5475189, at *9–10 (D.N.J. Oct. 29, 2014) ("[T]his Court's determination concerning whether the stipulated damages provision will apply requires the consideration and weighing of evidence outside the record, which is improper on a motion to dismiss under Rule 12(b)(6)."); Berman v. ADT LLC, No. 12-7705, 2013 WL 6916891, at *8 (D.N.J. Dec. 13, 2013) (declining to consider defendant ADT's argument to limit any award damages to the amount set forth in the contract because "[i]t is inappropriate for the Court to wade into factual issues, such as the measure of Plaintiffs' damages, on a motion to dismiss"). We will not consider the provision now nor

decide whether the provision is an unenforceable reverse liquidated damages clause, as HRC claims, and ADT may raise this provision in its Answer.[6]

For these reasons, we will deny ADT's motion to dismiss HRC's breach of contract claim.

### B. Promissory Estoppel (Count Two) and Equitable Estoppel (Count Three)

HRC alleges that it reasonably relied upon ADT's "clear and definite" promises that ADT would promptly call law enforcement and Fabricatore to its own substantial detriment, and therefore, ADT is liable for breaking these promises under the doctrine of promissory estoppel (Count Two). (Dkt. 30 at 8–9.) HRC also alleges that ADT is liable under the doctrine of equitable estoppel because HRC, to its detriment, reasonably relied upon ADT's conduct, including their acts, omissions, and/or silence, which indicated that ADT promised and represented it would call law enforcement and Fabricatore in the event that the alarm was triggered at the store (Count Three). (Id. at 9–10.)

ADT has moved to dismiss both claims. We will address both of these claims together because of their similarity.

ADT argues that it cannot be held liable under either a "quasi-contract" theory of promissory estoppel or equitable estoppel because under New Jersey law, these two equitable claims are unavailable when a written contract exists. (Dkt. 32-2 at 22–23; dkt. 35 at 11–13.)

---

[6] ADT also raises the damages limitation provision as grounds to dismiss HRC's claims of promissory estoppel (Count Two), equitable estoppel (Count Three), breach of implied covenant of good faith and fair dealing (Count Four), and breach of warranty (Count Five). For the reasons given here, we likewise will not consider this provision in evaluating whether to dismiss those claims.

ADT further contends that the contract is valid and it controls, and we should apply the agreed-upon terms.  (Dkt. 35 at 7–10.)

HRC contends that it has satisfied the liberal notice-pleading standard required by Rule 12(b)(6) for its promissory estoppel and equitable estoppel claims.  (Dkt. 33 at 20–21.) It disputes that promissory estoppel and equitable estoppel are "quasi-contract" theories of liability, but instead argues they constitute implied contracts.  (Id. at 21.)

We will dismiss with prejudice Count Two (promissory estoppel) and Count Three (equitable estoppel) because HRC cannot bring these claims as a matter of law when a valid, enforceable contract exists.

The "essential justification" for the doctrine of promissory estoppel is "to avoid the substantial hardship or injustice which would result" if a promise was made, and reasonably relied upon, but not enforced.  Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc., 704 A.2d 1321, 1324 (N.J. Super. Ct. App. Div. 1998).  "[P]romissory estoppel generally serves as a stop-gap where no valid contract exists to enforce a party's promise."  Kiss Elec., LLC v. Waterworld Fiberglass Pools, N.E., Inc., No. 14-3281, 2015 WL 1346240, at *5 (D.N.J. Mar. 25, 2015).

The doctrine of equitable estoppel applies when "conduct, either express or implied, which reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law."  D'Agostino v. Maldonado, 78 A.3d 527, 546 (N.J. 2013) (quotation omitted).  "Equitable estoppel is designed to prevent disavowal of prior conduct if a change of course would be unjust."  In re Johnson, 73 A.3d 440, 448 (N.J. 2013).

"[U]nder New Jersey law, liability based on quasi-contractual principles cannot be imposed 'if an express contract exists concerning the identical matter.'" <u>Freightmaster USA, LLC v. Fedex, Inc.</u>, No. 14-3229, 2015 WL 1472665, at *6 (D.N.J. Mar. 31, 2015) (quoting <u>Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.</u>, 716 F.2d 220, 226–27 (3d Cir. 1983)).

Promissory estoppel is a quasi-contract theory and "cannot be maintained where a valid contract fully defines the parties' respective rights and obligations." <u>Jones v. Marin</u>, No. 07-738, 2009 WL 2595619, at *6 (D.N.J. Aug. 20, 2009); <u>see also</u> <u>Hill v. Commerce Bancorp, Inc.</u>, No. 09-3685, 2012 WL 694639, at *14 (D.N.J. Mar. 1, 2012) (holding that party "cannot prevail on both a breach of contract and promissory estoppel theory for the same conduct, since promissory estoppel by its definition assumes that a contract supported by consideration has not been formed" (citing <u>Friedman v. Tappan Development Corp.</u>, 126 A.2d 646, 652–53 (1956)), <u>aff'd</u>, 586 F. App'x 874 (3d Cir. 2014).

HRC attempts to distinguish implied contracts and quasi-contracts, arguing that unjust enrichment is a quasi-contract theory, but promissory and equitable estoppel are not because they are implied contracts instead. (Dkt. 33 at 21.) We, however, have rejected this distinction and have repeatedly equated and applied both unjust enrichment and promissory estoppel as quasi-contract theories that are unavailable when a valid contract exists. <u>See, e.g.</u>, <u>Smith v. CitiMortgage, Inc.</u>, No. 15-7629, 2016 WL 8673066, at *6 (D.N.J. Aug. 5, 2016); <u>Kinney Bldg. Assocs., L.L.C. v. 7-Eleven, Inc.</u>, No. 15-7917, 2016 WL 2855063, at *5 (D.N.J. May 16, 2016).

It does not appear that either a federal or state court has ruled on whether equitable estoppel creates a quasi-contract in New Jersey. The cases cited by ADT, (dkt. 32-2 at 22–23; dkt. 35 at 11–12), refer to either promissory estoppel or unjust enrichment, but not to equitable estoppel. We, however, do not see a justifiable reason that the rule for equitable estoppel should be different than for promissory estoppel. Both HRC's promissory estoppel and equitable estoppel claims rely on the creation of a duty for ADT through a promise or representation, then the subsequent breach of that promise. (Dkt. 30 at 8–10.) Applying HRC's theory of equitable estoppel here would thus also involve an implied contract. Indeed, HRC acknowledges that "equitable estoppel is based on <u>implied</u> contract." (Dkt. 33 at 21.) For the same reasons that a promissory estoppel claim cannot imply a contract when a valid contract exists, neither should a claim of equitable estoppel. As New Jersey law makes clear, "an express contract excludes an implied one. An implied contract cannot exist when there is an existing express contract about the identical subject." <u>See</u> <u>Moser</u>, 78 A.2d at 394. Although New Jersey has not referred to equitable estoppel as a quasi-contract theory, the cases demonstrate that when an express contract exists, it controls, and courts should not create an implied contract governing the same agreement.

Because there is a valid contract here between HRC and ADT, that contract must be enforced and HRC cannot proceed on alternate theories of quasi-contract. Although a party may plead in the alternative, claims cannot proceed on quasi-contract theories absent a claim that the contract is invalid. <u>Freightmaster USA</u>, 2015 WL 1472665, at *6.

We will grant ADT's motion to dismiss Count Two and Count Three. We must dismiss these claims with prejudice because New Jersey law prohibits a party from recovering

on these quasi-contract theories when a valid contract exists.  See, e.g., Adler Engineers, 2014

WL 5475189, at *12 (dismissing with prejudice promissory estoppel claim, under Rule

12(b)(6), because it was a quasi-contract claim that cannot be raised as a matter of law when a

valid express contract existed).

### C.    Breach of Implied Covenant of Good Faith and Fair Dealing (Count Four)

HRC alleges that ADT violated the implied covenant of good faith and fair dealing by

making contractual promises to HRC and then breaking those promises.  (Dkt. 30 at 10–11.)

ADT moved to dismiss Count Four, arguing that HRC cannot maintain a separate

cause of action for breach of the covenant of good faith and fair dealing that is based on the

same conduct alleged in a breach of contract claim.  (Dkt. 32-2 at 23–24; dkt. 35 at 12–13.)[7]

HRC contends that it has sufficiently pleaded a claim for breach of the implied

covenant of good faith and fair dealing.  (Dkt. 33 at 20, 22.)  According to HRC, in New

Jersey, the covenant of good faith and fair dealing is implied in every contract, and therefore,

by definition, the implied covenant is based on the existence of an express contract.  (Id. at

21–22.)

In New Jersey, implied into every contract is a covenant of good faith and fair dealing.

Atlantic City Racing Assoc. v. Sonic Fin. Corp., 90 F. Supp. 2d 497, 510 (D.N.J. 2000).

"'[I]mplied covenants are as effective components of an agreement as those covenants that

---

[7] In its reply brief, ADT argues for the first time that the claim must also be dismissed because HRC
has failed to specify any acts done in bad faith.  (Dkt. 35 at 13 n.5.)  HRC had no opportunity to
respond to this argument.  We have not considered this alternate ground for dismissal because it was
not raised in the initial brief.  See Ballas v. Tedesco, 41 F. Supp. 2d 531, 533 (D.N.J. 1999) ("A
moving party may not raise new issues and present new factual materials in a reply brief that it should
have raised in its initial brief."); Boisvert v. State Farm Fire & Cas. Co., No. 14-5760, 2015 WL
5771797, at *5 (D.N.J. Sept. 29, 2015).

are express,' and 'a party's performance under a contract may breach [an] implied covenant even though that performance does not violate a pertinent express term.'" Fields v. Thompson Printing Co., 363 F.3d 259, 271 (3d Cir. 2004) (quoting Wilson v. Amerada Hess Corp., 773 A.2d 1121, 1126 (N.J. 2001)). The implied covenant may fill in the gaps to give efficacy to a contract as written when some terms of the contract are not specific, but "where the terms of the parties' contract are clear, the implied covenant of good faith and fair dealing will not override the contract's express language." Id. at 271–72.

Thus, we have repeatedly explained that a plaintiff "may not sustain a separate cause of action for breach of the covenant of good faith and fair dealing based on the same conduct that has given rise to their breach of contract claims and where the terms of their contract are clear." TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC, No. 12-3355, 2013 WL 6048720, at *3 (D.N.J. Nov. 14, 2013); see also Elite Pers., Inc. v. PeopleLink, LLC, No. 15-1173, 2015 WL 3409475, at *3 (D.N.J. May 27, 2015) ( "[A] plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the alleged breach of contract." (quotation omitted)).

We find that HRC has not made sufficient factual allegations of a breach of the implied covenant beyond the breach of the contract. HRC has provided no specific claims indicating how ADT breached its "obligation to perform in good faith" by doing something that "interfere[d] with or destroy[ed] [HRC's] reasonable expectations under the contract." See Atlantic City Racing Assoc., 90 F. Supp. 2d at 510. HRC merely states that promises were made by ADT and ADT's conduct violated the implied covenant of good faith and fair

dealing, without providing factual support for the allegation. (Dkt. 30 at 10–11.) The conduct HRC refers to is the same allegations that give rise to the breach of contract claim. We must therefore dismiss HRC's breach of implied covenant of good faith and fair dealing claim against ADT.

We will dismiss the claim without prejudice. HRC may seek leave to amend its First Amended Complaint in accordance with the FRCP and our local rules. If successful, ADT will be given the opportunity to respond to the new allegations and file a motion to dismiss.

### D. Breach of Warranty (Count Five)

HRC alleges that ADT made both express and implied warranties for the alarm system and services provided, including for example, that "the alarm system and services were fit for the particular purposes" that HRC would use them for, and that "ADT's monitoring services were capable of receiving alert signals and implementing notifications to the customer as well as local law enforcement." (Dkt. 30 at 11–12.) HRC claims that ADT breached those warranties. (Id.)

ADT argues that the contract controls, and that a warranty disclaimer provision precludes HRC from bringing this claim. (Dkt. 32-2 at 17–19 (citing dkt. 32-3 at 7); dkt. 35 at 13.) ADT argues that this provision is conspicuously disclaimed, and is thus enforceable against HRC, because the clause is written in all bold and capital-letter, offset from the lower-case, non-bolded letters in the rest of the contract. (Dkt. 32-2 at 18.)

HRC argues that the warranty disclaimer provision is unenforceable because New Jersey requires a warranty disclaimer to be conspicuous, but the provision in the contract is set forth in tiny, unreadable print. (Dkt. 33 at 22–23.)

The contract provides a warranty for defective material or workmanship in the alarm system installed within ninety days of the installation. (Dkt. 32-3 at 7; dkt. 33-3 at 2.) The warranty disclaimer provision in the contract states:

> **THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. CUSTOMER'S EXCLUSIVE REMEDY WITH RESPECT TO ANY AND ALL LOSSES OR DAMAGES RESULTING FROM ANY CAUSE WHATSOEVER, INCLUDING ADT'S NEGLIGENCE, SHALL BE REPAIR OR REPLACEMENT AS SPECIFIED ABOVE. ADT SHALL IN NO EVENT BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES OF ANY NATURE, INCLUDING WITHOUT LIMIATION, DAMAGES FOR PERSONAL INJURY OR DAMAGES TO PROPERTY, AND HOWEVER OCCASIONED, WHETHER ALLEGED AS RESULTING FROM BREACH OF WARRANTY OR CONTRACT BY ADT OR NEGLIENCE OF ADT OR OTHERWISE.**

(Id.)

In New Jersey, "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." N.J.S.A. 12A:2-316 ("Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'") The parties agree that disclaimers of warranties are valid provided that they are "conspicuous," but the parties disagree as to whether the warranty disclaimer provision in the contract meets that standard.

The New Jersey Legislature has explained that "'Conspicuous,' with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." N.J.S.A. 12A:1-201(10).

> Conspicuous terms include the following:
>
> > (a) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
> > (b) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

Id.

Deciding whether a term meets this definition of conspicuous is a question for the court. Id. We thus have routinely resolved this question at the motion to dismiss stage. See, e.g., Rapid Models & Prototypes, Inc. v. Innovated Solutions, No. 14-277, 2015 WL 4914477, at *7–8 (D.N.J. Aug. 18, 2015); T.J. McDermott Transp. Co. v. Cummins, Inc., No. 14-04209, 2015 WL 1119475, at *12 (D.N.J. Mar. 11, 2015).

The warranty disclaimer in the contract is on the first page of the contractual terms, set off by a bullet point, and emphasized in bolded, capital letters. (Dkt. 32-3 at 7; dkt. 33-3 at 2.)[8] This creates a contrast to the surrounding paragraphs which are not bulleted, and in standard lower-case, unbolded letters. See id. The warranty explicitly mentions merchantability and fitness for a particular purpose. Id.

---

[8] In analyzing the provision, we have looked at both the version of the contract supplied by HRC and that supplied by ADT. (Dkt. 32-3; dkt. 33-3.) The language is the same in both versions, but the size of the printed text is different.

We find that the disclaimer is clear and unambiguous, and therefore, conspicuous within the meaning of the statute. The warranty disclaimer is thus enforceable against HRC. We will grant ADT's motion to dismiss Count Five. Because the warranty disclaimer provision is valid, we will dismiss the claim with prejudice because amending the claim would be futile. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008) (holding that dismissal with prejudice is appropriate where an amendment to the complaint would be inequitable or futile). See, e.g., Rapid Models & Prototypes, 2015 WL 4914477, at *7–8 (dismissing with prejudice breach of warranty claim after finding that the warranty disclaimer provision was valid and enforceable); Advanced Drainage Sys., Inc. v. SiteCo Materials, Inc., No. 13-1349, 2014 WL 1092809, at *2–4 (D.N.J. Mar. 18, 2014) (same).

### E.    New Jersey Consumer Fraud Act (Count Six)

HRC alleges that ADT violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., (the "CFA"), when selling the alarm system and services "through the use of employment of unconscionable commercial practices, deceptions, fraud, false pretenses, false promises, misrepresentations, and/or the knowing concealment, suppression or admission of material facts in connection with the services they performed." (Dkt. 30 at 12–13.) Specifically, HRC claims that ADT represented to HRC that the alarm monitoring system involved immediately notifying HRC and law enforcement if the alarm were triggered. (Id. at 13.) But, according to HRC, ADT insulated themselves from any liability by placing exculpatory clauses, damage-limitation clauses, and other waivers into the contract with "print so tiny as to be illegible and effectively hidden from view," amounting to an "unconscionable

trade practice." (Id. at 13–14.) HRC also alleges that ADT forged an HRC signature on a 2006 Sales Proposal/Agreement. (Id. at 14.)

ADT has moved to dismiss HRC's CFA claim. ADT argues that New Jersey law bars CFA claims for contractual disputes. (Dkt. 32-2 at 27.) ADT contends that HRC only alleges a failure to properly perform contractual obligations, which does not give rise to a CFA claim. (Id. at 27–30; dkt. 35 at 14.) ADT further argues that the contract, including the exculpatory clauses, are enforceable. (Dkt. 32-2 at 30–32.) Lastly, ADT argues that HRC has not alleged an ascertainable loss with respect to the alleged 2006 forged signature, as required by the CFA, and that HRC's CFA claim regarding the 2006 contract must therefore be dismissed. (Id. at 32–33.) Moreover, ADT notes that the 2006 contract was not in effect at the time of the 2015 burglary at HRC's store. (Id. at 33; dkt. 35 at 14 n.6.)

In response, HRC argues that ADT's objections go to the weight of the evidence and are more appropriate at the summary judgment stage, rather than at the motion to dismiss stage. (Dkt. 33 at 24.) HRC submits that it has sufficiently pleaded the elements of a CFA violation. (Id.) HRC acknowledges that, under New Jersey law, a breach of contract claim alone cannot constitute a CFA violation, but HRC contends that it has made allegations apart from the breach of contract that would establish unconscionable practices, including that ADT forged a HRC signature in 2006. (Id. at 24–26.)

The New Jersey Consumer Fraud Act was "designed to promote the disclosure of relevant information to enable [ ] consumer[s] to make intelligent decisions in the selection of products and services." Belmont Condo. Ass'n v. Geibel, 74 A.3d 10, 27 (N.J. Super. Ct. App. Div.), certif. denied, 80 A.3d 747 (N.J. 2013). The CFA thus imposes liability on a

person who uses "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission." N.J.S.A. 56:8-2.

"The standard of conduct that the term 'unconscionable' implies is lack of good faith, honesty in fact and observance of fair dealing." Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994) (quotation omitted). A breach of contract or breach of warranty, however, is not per se unconscionable. Id. To demonstrate unconscionable acts in connection with a breach of contract, "substantial aggravating circumstances" must be present in addition to the alleged breach of contract. Id. Substantial aggravating circumstances include, "the existence of bad faith or lack of fair dealing, sufficient to constitute an 'unconscionable business practice.'" Petri Paint Co. v. Omg Ams., Inc., 595 F. Supp. 2d 416, 421 (D.N.J. 2008) (quoting Cox, 647 A.2d at 462).

To state a claim, an individual must allege sufficient facts to demonstrate: "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84, 97 (D.N.J. 2011) (citing International Union of Operating Engineers Local No. 68 Welfare Fund ("IUOEL 68") v. Merck & Co., 929 A.2d 1076, 1086 (2007)). Three types of unlawful conduct are recognized under the CFA: affirmative misrepresentations, knowing omissions, and regulation violations. Mladenov v. Wegmans Food Markets, Inc., 124 F. Supp. 3d 360, 373 (D.N.J. 2015). We construe the CFA liberally because it is remedial legislation. Smajlaj, 782 F. Supp. 2d at 98 (citing IUOEL 68, 929 A.2d at 1079 n.1).

HRC has made allegations of unlawful conduct beyond a mere breach of contract, which otherwise would be insufficient to state a claim. HRC's allegation of a forged signature on a contract, even if not the operative contract at the time of burglary, is a specific allegation beyond a mere contract dispute. Forging a signature on a contract "stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer." See Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 655 A.2d 417, 430 (N.J. 1995). This one act of forgery—assuming it is true, as we must at this stage—is sufficiently unconscionable that it is a substantial aggravating circumstance on its own. We conclude that the allegation of forgery is a sufficient allegation of aggravating circumstances at this initial pleading stage. See, e.g., Naporano Iron & Metal Co. v. American Crane Corp., 79 F. Supp. 2d 494, 507 (D.N.J. 1999) (distinguishing between burden of proving an unconscionable practice at trial and alleging substantial aggravating circumstances at the initial pleading stage to survive a motion to dismiss). HRC, however, has made no allegations in its Amended Complaint regarding an ascertainable loss steaming from the alleged unconscionable practices beyond that resulting from a breach of contract. Nor has HRC alleged how a 2006 forged signature on a non-operative contract led to that loss. Therefore, we find that HRC has not sufficiently alleged facts to support all elements of a CFA claim in the pleadings. See Smajlaj, 782 F. Supp. 2d at 98.

We will dismiss without prejudice Count Six, the Consumer Fraud Act claim. HRC may seek leave to amend its First Amended Complaint in accordance with the FRCP and our local rules. If HRC is granted leave to amend, ADT will be given the opportunity to respond to the new allegations.

### F. Products Liability (Count Seven)

HRC alleges that ADT's alarm and alarm system "was not reasonably fit or suitable for its intended purpose," "failed to contain adequate warnings," or "was designed in a defective manner," in violation of the New Jersey Products Liability Act (the "PLA"), N.J.S.A. 2A:58C-1 et seq. (Dkt. 30 at 15.)

ADT contends that HRC has provided insufficient factual support for the claim, specifically that HRC only alleged a vague defect without identifying whether the alarm was defective at the time it left ADT's control and that HRC has not averred that ADT failed to act in a reasonable manner while manufacturing, designing, or marketing the alarm system. (Dkt. 32-2 at 35–37; dkt. 35 at 17–18.) ADT argues that if the claim were to proceed, all other counts must be dismissed because the Products Liability Act is the exclusive remedy for product defects available by New Jersey law. (Dkt. 32-2 at 33–35; dkt. 35 at 14–17.)

HRC argues that it has alleged sufficient facts at the pleading stage to state a claim against ADT for products liability. (Dkt. 33 at 27.) HRC also argues that its claims against ADT are not subsumed by the PLA because the remaining claims do not arise from ADT's duty to provide a safe product. (Id. at 27–28.)

Under the PLA, a claimant must demonstrate that "the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner." N.J.S.A. 2A:58C-2.

We find that HRC does not allege specific facts for a defective product. HRC merely parallels the legal standard, N.J.S.A. 2A:58C-2, without providing any supporting factual allegations. (See dkt. 30 at 15.) The Amended Complaint does not cite any product failure or defect in the alarm or alarm system. Rather, the allegations indicate that the ADT alarm worked and was "triggered, alerting the ADT monitoring station to the break-in," but ADT chose not to call law enforcement or Fabricatore. (Dkt. 30 at 5–6.)

We find that these bare allegations are insufficient to state a claim upon which relief may be granted. See Iqbal, 556 U.S. at 678.[9] We will therefore grant without prejudice ADT's motion to dismiss Count Seven, the Products Liability Act claim. HRC may seek leave to amend its First Amended Complaint in accordance with the FRCP and Local Civil Rules. Should HRC's motion to amend its Amended Complaint be successful, ADT may move to dismiss an amended products liability claim from the Second Amended Complaint in accordance with the FRCP and Local Civil Rules.

### G.      Theft/Civil Conspiracy to Commit Theft (Count Eight)

HRC alleges that the burglars acted with "inside knowledge" because ADT employees or agents were involved with or participated in the burglary and theft. (Dkt. 30 at 16.) HRC claims that ADT employees conspired with the burglars, or each other, to burglarize the store and steal merchandise. (Id.)

ADT has moved to dismiss HRC's civil conspiracy claim, arguing that HRC has failed to meet the heightened pleading standard required by Rule 9(b). (Dkt. 32-2 at 39–41; dkt. 35

---

[9] Because we find that HRC has failed to state a claim, we need not address ADT's argument that the PLA subsumes the remainder of HRC's claims and would be the exclusive remedy available to HRC.

at 19–20.)  ADT also argues that it cannot be held vicariously liable for the actions of its

employees taken outside the scope of their employment, such as providing inside information

to burglars.  (Dkt. 32-2 at 39; dkt. 35 at 18–19.)  ADT also argues that civil conspiracy in

New Jersey requires a valid underlying tort claim and that if we were to dismiss HRC's other

tort claims, we would have to dismiss the civil conspiracy claim as well.  (Dkt. 32-2 at 37–

38.)  ADT disputes that theft as alleged in the Amended Complaint qualifies as a substantive

underlying tort claim to support a civil conspiracy claim.  (Dkt. 35 at 20.)

HRC contends that it has sufficiently pleaded a count of civil conspiracy by ADT.

(Dkt. 33 at 29–30.)  HRC argues that the theft allegation (traditionally referred to as a claim

for trover or conversion) qualifies as an underlying tort claim for the civil conspiracy claim.

(Id. at 30.)  HRC also argues ADT can be held liable under New Jersey law for any employee

involvement in the burglary.  (Id. at 29–30.)

ADT argues that the heightened pleading standard of Rule 9(b) applies to this claim,

and HRC does not dispute this.  We do not agree though that a heightened pleading standard

applies here to a civil conspiracy claim that does not allege fraud.

Federal Rule of Civil Procedure 9(b) provides: "In alleging fraud or mistake, a party

must state with particularity the circumstances constituting fraud or mistake.  Malice, intent,

knowledge, and other conditions of a person's mind may be alleged generally."

In determining whether the heightened pleading standard of Rule 9(b) applies, "the test

is whether the particular claim alleged in this matter sounds in fraud.  If so, the pleading is

subject to 9(b)."  Gray v. Bayer Corp., No. 08-4716, 2009 WL 1617930, at *2 (D.N.J. June 9,

2009).  When no fraud is involved, the general Rule 8 pleading standard applies to a claim of

civil conspiracy.  See, e.g., Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 184–85 (3d

Cir. 2009) (applying Iqbal to civil conspiracy claim); Wiatt v. Winston & Strawn LLP, 838 F.

Supp. 2d 296, 316–18 (D.N.J. 2012) (applying heightened Rule 9(b) pleading standard to

fraud claims, but not civil conspiracy claim); Warren v. Fisher, No. 10-5343, 2011 WL

4073753, at *3–4 (D.N.J. Sept. 12, 2011) (applying Twombly to civil conspiracy claim).  See

also Sawl v. The Borough of W. Kittanning, No. 10-008, 2010 WL 1444868, at *6 (W.D. Pa.

Apr. 9, 2010) ("Since Twombly and Iqbal, the United States Court of Appeals for the Third

Circuit has applied their holdings in the context of civil conspiracy claims.").[10]

  We are not convinced that the allegations of theft are based in fraud.  HRC accuses

ADT employees of using force, not fraud or deception, to break into the store and steal

merchandise.  Therefore, we will not apply the heightened pleading standard of Rule 9(b).

  In New Jersey, to state a claim of civil conspiracy, an individual must allege "a

combination of two or more persons acting in concert to commit an unlawful act, or to

commit a lawful act by unlawful means, the principal element of which is an agreement

between the parties to inflict a wrong against or injury upon another, and an overt act that

results in damage."  Banco Popular North America v. Gandi, 876 A.2d 253, 263 (N.J. 2005)

(quotation omitted); Am. Corporate Soc'y v. Valley Forge Ins. Co., 424 F. App'x 86, 90 (3d

Cir. 2011).  "'The gravamen of a conspiracy action is not the conspiracy itself but the

_____

[10] Spitz v. Medco Health Sols., Inc., No. 10-01159, 2010 WL 4615233, at *4 (D.N.J. Nov. 3, 2010),
relied on by ADT (dkt. 32-2 at 39–40), appears to be the only case within the District to apply the
heightened pleading standard to a civil conspiracy claim, absent allegations of fraud.  The case Spitz
relies on to apply a heightened pleading standard, Sawl v. Borough of West Kittanning, notes that the
Third Circuit applies the Twombly and Iqbal standard to civil conspiracy claims.  2010 WL 1444868,
at *6.  We decline to follow Spitz, and instead follow the majority of other cases that have not applied
a heightened pleading standard for a civil conspiracy claim without allegations of fraud.

underlying wrong which, absent the conspiracy, would give a right of action.'"  Ewing v. Cumberland Cnty., 152 F. Supp. 3d 269, 301 (D.N.J. 2015) (quoting Bd. of Educ. v. Hoek, 183 A.2d 633, 646 (N.J. 1962)).

HRC alleges that at least one ADT employee or agent entered into an agreement with the burglars to commit the unlawful act.[11]  According to HRC, the burglars acted with inside knowledge of the store and ADT alarm system, believed to be provided by ADT.  (Dkt. 30 at 16.)  HRC states that the silent panic alarm was triggered, but at that time ADT did not call HRC or law enforcement.  (Id. at 5.)  HRC alleges that an ADT employee later falsely told Fabricatore that there was a power outage and that the alarm system was still functioning on a backup battery.  (Id. at 6–7.)  HRC claims that this allowed the burglars to stay in the store for three hours because Fabricatore was led to believe that "nothing was wrong" and he would be notified if anything did go wrong.  (Id. at 5, 7.)  HRC also states that ADT claimed to conduct an investigation into the burglary, but would not release its findings to HRC.  (Id. at 7.)  Assuming what HRC states as true, a plausible claim of conspiracy to commit theft has been averred.  See Wiatt, 838 F. Supp. 2d at 317 ("In order to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a civil conspiracy claim must allege 'at least some facts which could, if proven, permit a reasonable inference of a conspiracy to be drawn.'" (quoting Durham v. City and County of Erie, 171 F. App'x 412, 415 (3d Cir. 2006)).

---

[11] HRC relies on a certification by Fabricatore to supplement its allegations of a civil conspiracy claim.  (Dkt. 33 at 24.)  As discussed above, we have only considered the allegations made in the Amended Complaint and have not reviewed any additional materials attached to the opposition brief that HRC has used in attempt to bolster its claims.

ADT, however, argues that it cannot be held liable for the actions of its employees or agents that were done outside the course and scope of their employment. An employer is liable, under the doctrine of respondeat superior, for the tortious conduct of its employees performed within the scope of employment. Brijall v. Harrah's Atl. City, 905 F. Supp. 2d 617, 622 (D.N.J. 2012). Generally, intentional torts fall outside the scope of employment. Id.

HRC has made no allegations in the Amended Complaint of how an employee was working within the scope of employment to hold ADT vicariously liable. There are not sufficient facts in the pleadings to state a claim against ADT for the conduct of its employees under the doctrine of respondeat superior. See Iqbal, 556 U.S. at 678

We must therefore grant ADT's motion to dismiss HRC's civil conspiracy claim against ADT. We will dismiss the claim without prejudice. HRC can seek leave to amend the claim in accordance with the FRCP and the local rules. If successful, ADT will be given the opportunity to respond.

## CONCLUSION

For the reasons stated above we: deny the motion to dismiss as to Count One; grant the motion and dismiss with prejudice Count Two, Count Three, and Count Five; and grant the motion and dismiss without prejudice Count Four, Count Six, Count Seven, and Count Eight.

We will enter an appropriate order and judgment.


  s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

**Dated:** May 2, 2017