UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HILLSBOROUGH RARE COINS, LLC. | : |
| Plaintiff, | : Civil No. 16-916 (FLW)(DEA) |
| v. | : |
| | : **OPINION** |
| ADT LLC, f/k/a ADT SECURITY SERVICES, INC, et al. | : |
| Defendants. | : |

ARPERT, Magistrate Judge

This matter comes before the Court by Plaintiff Hillsborough Rare Coins, LLC ("Plaintiff" or "HRC") on a Motion for leave to file a Second Amended Complaint [ECF No. 48]. Plaintiff, a small business that collects and sells rare coins, brings this action against Defendant ADT Security Services, Inc. ("Defendant" or "ADT"), alleging that ADT breached a contractual obligation under an Agreement entered into in 2014. For the reasons set forth below, Plaintiff's Motion for leave to file a Second Amended Complaint is granted in part and denied in part.

## I. BACKGROUND AND PROCEDURAL HISTORY

In 2006, Plaintiff had an ADT burglary alarm system installed on its premises, located in Green Brook, New Jersey. Second Amended Complaint ("SAC"), ¶ 6. In exchange for a fee, Plaintiff alleges that ADT "promised" to provide store monitoring services, as well as contact law enforcement and Plaintiff if the alarm system was triggered. *Id.*, ¶ 7. But Plaintiff contends that an agreement was never signed; rather, Plaintiff "[r]ecently" discovered that a representative of ADT forged the signature of Victor

1

Fabricatore ("Mr. Fabricatore"), HRC's owner, on a Sales Proposal/Agreement containing Terms and Conditions limiting ADT's potential liability, dated May 7, 2006 (the "2006 Agreement"). *Id.*, ¶ 8.

In 2014, Plaintiff entered into a new contract, under which HRC's existing burglary alarm unit was upgraded and converted to the "Pulse" system (the "2014 Agreement"). *Id.*, ¶ 12. ADT's responsibilities under this contract remained essentially the same; specifically, pursuant to Paragraph B, ADT agreed to provide signal receiving and notification services: "If an alarm signal registers at ADT's [Customer Monitoring Center], ADT shall endeavor to notify the appropriate Police or Fire Department and the designated representative of Customer." *Id.*, ¶ 15. Plaintiff alleges that this contract provision is consistent with an ADT associate's earlier representation, when the alarm system was first purchased and installed. *Id.*, ¶ 16.

On June 1, 2015, at approximately 10:30 p.m., three burglars broke into HRC using sophisticated tools and techniques, entering through the wall of an adjoining business and accessing HRC's rear room. *Id.*, ¶¶ 17-19. As video surveillance purportedly demonstrates, the heist lasted for approximately three hours and the burglars absconded with "numerous valuable rare coins and other merchandize, while also causing extensive physical damage to the store." *Id.*, ¶¶ 18, 20.

Upon entering HRC, the burglars "cut or attempted to cut" the alarm system's cables and ripped its components from the wall, but the silent panic system was activated, alerting ADT's monitoring station of the intrusion. *Id.*, ¶¶ 21-23. Although ADT informed HRC of the silent panic alarm through a computer-generated email to HRC at 10:36 p.m., it was marked as spam and noticed only after the burglary concluded. *Id.*, ¶¶ 23, 24.

Nevertheless, Plaintiff alleges that ADT had a contractual obligation to call Mr. Fabricatore's cell phone and law enforcement, yet ADT failed to notify either party. *Id.*, ¶¶ 24-25. On June 2, 2015, the following morning, it was discovered that HRC had been burglarized. *Id.*, ¶ 30.

On December 2, 2015, Plaintiff brought the instant action against ADT in New Jersey Superior Court, Somerset County. On February 19, 2016, ADT filed a Notice of Removal to the United States District Court of New Jersey on the basis of diversity jurisdiction. Subsequently, Plaintiff filed an eight-count Amended Complaint, among which include breach of contract and New Jersey Consumer Fraud Act ("NJCFA" or the "Act") claims. Defendant then moved for dismissal, which this Court granted as to every claim except the breach of contract claim.

Plaintiff now seeks leave to amend its claim under the NJCFA, arguing that on September 26, 2014, Defendant induced "Plaintiff to sign their alarm installation and services contract" by representing that ADT would "competently monitor the alarm system . . . and, if the alarm system was triggered, immediately notify [Plaintiff] as well as local law enforcement." *Id.*, ¶ 59. Allegedly unbeknownst to Plaintiff, the 2014 Agreement contained "exculpatory clauses, within print so tiny as to be illegible and effectively hidden from view," which, in turn, limited ADT's contractual liability. *Id.*, ¶ 60. Plaintiff also seeks to correct its name in the caption of the Complaint, because it was wrongly designated as a limited liability company, despite operating as a sole proprietorship owned by Mr. Fabricatore. ADT opposes the motion, arguing that the proposed Second Amended Complaint fails to establish the required element of causation under the NJCFA.

## II. ANALYSIS

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." The decision to grant leave to amend rests within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 330 (1970). In determining a motion for leave to amend, courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### B. The NJCFA

The legislative purpose of the NJCFA is to "promote the disclosure of relevant information to enable the consumer to make intelligent decisions in the selection of products and services." *Belmont Condominium Ass'n, Inc. v. Geibel*, 74 A.3d 10, 27 (N.J. Super. Ct. App. Div. 2013). In that connection, the NJCFA prohibits a person from engaging in "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission . . . ." N.J.S.A. § 56:8-2.

A plaintiff will successfully state a claim under the NJCFA where each of the following three factors are pled sufficiently: "(1) unlawful conduct; (2) an ascertainable

loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Smajlaj v. Campbell Soup Co.,* 782 F. Supp. 2d 84, 97 (D.N.J. 2011) (citing *International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007)). Unlawful conduct, the first requisite under the NJCFA, is comprised of three general categories, including: "affirmative acts, knowing omissions, and violation of regulations promulgated under the Act." N.J.S.A. §§ 56:8-2, 56:8-4.

Although this Court previously found that Plaintiff's forgery allegations constitute unlawful conduct, the Amended Complaint failed to include any facts in support of the Act's second and third elements. *Hillsborough Rare Coins, LLC v. ADT LLC,* No. 16-916, 2017 U.S. Dist. Lexis 67113, at *20-23 (D.N.J. May 2, 2017). Plaintiff did not allege an ascertainable loss stemming from the alleged unconscionable practices beyond that resulting from a breach of contract, nor did Plaintiff allege how a 2006 forged signature on a non-operative contract led to that loss. Yet despite these pleading deficiencies, Plaintiff was afforded an opportunity to sufficiently assert a claim under the NJCFA, by way of the proposed Second Amended Complaint.

### C. Undue Delay

As an initial matter, "[d]elay alone will not constitute grounds for denial." *Bjorgung v. Whitetail Resort*, LP, 550 F.3d 263, 266 (3d Cir. 2008). However, if the delay is "undue, motivated by bad faith, or prejudicial to the opposing party," the motion to amend may be properly denied. *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 803 (3d Cir. 2010) (quoting *Bjorgung*, 550 F.3d at 266).

Despite only having to identify an ascertainable loss and establish causation, Plaintiff waited approximately four months to seek leave to file a Second Amended

5

Complaint, in an action which has been pending for more than two years. Plaintiff has not provided any explanation for his failure to amend sooner, notwithstanding the fact that no additional discovery was required. In that connection, the additional allegations upon which Plaintiff moves to amend were known prior to the filing of the original complaint, as Plaintiff's breach of contract and NJCFA claims stem from the same set of facts. Significantly, the Third Circuit has found undue delay in such circumstances. *Panetta v. SAP Am., Inc.*, 294 Fed. Appx. 715, 718 (3d Cir. 2008) (affirming the denial of a motion to amend, because the proposed complaint arose from "the same set of facts" under which the original complaint was filed); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (affirming the denial of a motion to amend, as "[m]ost of the facts were available to plaintiff . . . before she filed her" initial complaint). And while Plaintiff fails to justify the delay here, even if Plaintiff's motion was timely, the Court finds that the proposed Second Amended Complaint fails to adequately plead a causal relationship under the NJCFA, as further discussed *infra*.

### D. Casual Relationship

In an attempt to cure its deficiencies and plead the elements required under the NJCFA, Plaintiff includes the following additional allegations in the proposed Second Amended Complaint:

> 64. The forgery of the 2006 Sales Proposal/Agreement is significant because this contract governed or purported to govern the initial installation of the ADT alarm system at HRC's [Green Brook] store, and the providing of the promised monitoring and notification services. The 2014 upgrade to "Pulse" did not change the basic alarm system and ADT's original promise to notify law enforcement and HRC if the alarm were triggered.
>
> 66. As a proximate result of the above described acts of consumer fraud, HRC sustained an ascertainable loss. To begin with, ADT's forgery of the original 2006 contract precluded HRC from reviewing the Terms and

> Conditions that ADT would later claim limited its liability for providing the agreed-upon services. . . . Among HRC's losses are the monies paid to ADT for the initial burglary alarm system as well as the "Pulse" upgrade in 2014; the losses from the burglary that occurred when ADT's alarm system failed to work as promised; and the additional monies that HRC had to pay to purchase another alarm system from a different company following the burglary.

SAC, ¶¶ 64, 66. To the extent that Plaintiff has properly alleged an ascertainable loss, the proposed Second Amended Complaint does not cure the previously stated deficiencies, as Plaintiff has failed to establish that the losses stem from an alleged forgery on a non-operative agreement in 2006. Under the NJCFA, to establish causation, a consumer must "demonstrate that he or she suffered an ascertainable loss 'as a result of' the unlawful practice." *Lee v. Carter-Reed Co., L.L.C.*, 4 A.3d 561, 577 (N.J. 2010) (citations omitted); *see also*, *Ramanadham v. New Jersey Mfrs. Ins. Co.*, 455 A.2d 1134, 1136 (N.J. Super. Ct. App. Div. 1982) (a party must show "the extent of any ascertainable loss, particularly proximate to a misrepresentation or other unlawful conduct of the defendant by the [Act].").[1] That is, a plaintiff must allege "specific facts establishing a connection between the alleged conduct of Defendants and the alleged injury claimed." *Hall v. Bristol-Myers Squibb Co.*, Nos. 06-5203, 06-6050, 2009 U.S. Dist. LEXIS 121057, at *26 (D.N.J. Dec. 30, 2009) (citations omitted).

Here, Plaintiff fails to satisfy its burden through the allegations pled in the proposed Second Amended Complaint. Plaintiff attempts to establish a relationship between the

---

[1] Plaintiff argues that the ascertainable loss need not be "specifically tied to the 2006 forged contract," Plaintiff's Reply Brief, at 6, but this argument is without merit, and is contradicted by well-established case law, as well as this Court's prior Opinion, wherein HRC was directed to allege "how a 2006 forged signature on a non-operative contract" is connected to an ascertainable loss. *Hillsborough Rare Coins, LLC*, 2017 U.S. Dist. Lexis 67113, at *23.

alleged forgery and harm by arguing that the unlawful act "precluded HRC from reviewing the Terms and Conditions" of the 2014 Agreement. SAC, ¶ 66. But aside from this conclusory allegation, Plaintiff fails to explain why HRC was prevented from reviewing the 2014 Agreement, as a result of an alleged forgery in 2006. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 908 (3d Cir. 1997) ("As we have noted, we need not accept 'bald assertions' or 'legal conclusions' contained in the complaint.") (citing *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor can the Court conceive of such a reason, particularly since Plaintiff, in the proposed Second Amended Complaint, inconsistently asserts that HRC "entered into an agreement with ADT, to upgrade the store's existing ADT alarm to the 'Pulse' system" in 2014. SAC, ¶ 12. Accordingly, this conclusory allegation, with nothing more, is insufficient for the purposes of establishing a causal relationship under the NJCFA.

Nevertheless, Plaintiff emphasizes that the 2006 Agreement is "significant because this contract governed or purported to govern the initial installation of the ADT alarm system . . . and the providing of the promised monitoring and notification services." SAC, ¶ 64. Yet despite these purported ramifications, the Court previously concluded that the 2006 Agreement constitutes a "non-operative" contract. *Hillsborough Rare Coins, LLC*, 2017 U.S. Dist. Lexis 67113, at *23. Indeed, the party's entered into a separate Agreement in 2014, the provisions of which governed their relationship when the burglary occurred, and form the basis of this instant action. Thus, the significance of the 2006 Agreement, as argued by Plaintiff, is an insufficient basis for establishing a casual relationship between the unlawful conduct and harm.

Nor are Plaintiff's specific examples of ascertainable loss connected to the alleged forgery, among which include the costs of: (a) the 2006 alarm system; (b) the "Pulse" upgrade; and (c) the new alarm system installed after the robbery; as well as (d) the loss and damage which resulted from the intrusion. Plaintiff's examples are insufficient for the purpose of establishing causation, as the latter three, if anything, stem from ADT's alleged failure to fulfill its monitoring and notification services pursuant to its contractual obligations under the 2014 Agreement—not a forgery which ostensibly occurred nine years before the burglary, on a contract which no longer governed the party's relationship.

Plaintiff likewise fails to demonstrate a casual relationship between the forgery and purchase of the initial alarm system in 2006. Although Plaintiff maintains that a written contract was not signed, Plaintiff contends that the system was originally installed "in exchange for the fees" which HRC paid to ADT. SAC, ¶ 7. Albeit not in writing, this agreement between the parties, as opposed to the forgery, presumably led to the installation of the alarm system in 2006.[2] In fact, Plaintiff asserts that it only "[r]ecently" became aware of the alleged forgery, when "searching for relevant paperwork" in regard to its alarm system. *Id.*, ¶ 8. Thus, because Plaintiff has failed to allege an ascertainable loss that is casually related to the alleged forgery, the amendments with respect to the NJCFA claim are futile.[3]

---

[2] Indeed, the Court is hard-pressed to find that the alleged forgery resulted in the installation of a security alarm system, only to be discovered by Plaintiff nine years later, upon the filing of this action against ADT.

[3] As stated above, Plaintiff also contends that it "was wrongly designated in the Complaint . . . as a limited liability company," despite operating as a sole proprietorship owned by Mr. Fabricatore. Plaintiff's Motion to Amend, at 1. As further discussed *infra*, Plaintiff is granted leave to implement the appropriate changes with regard to its business designation, as Plaintiff is merely correcting a misnomer, the result of which has no bearing

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend the First Amended Complaint as to its claim under the NJCFA is denied. However, Plaintiff's request to amend the First Amended Complaint for the purpose of properly identifying Plaintiff's business designation is granted. Plaintiff shall file an identical Second Amended Complaint within 7 days from the date of this Opinion, designating Mr. Fabricatore, doing business as HRC, as the appropriate plaintiff in this action. An appropriate Order accompanies this Opinion.

/s/ Douglas E. Arpert
DOUGLAS E. ARPERT
United States Magistrate Judge

---

on the claims or substance of this action. Indeed, the requested adjustment has not been opposed.