UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VICTOR FABRICATORE, d/b/a/ HILLSBOROUGH RARE COINS, | |
| Plaintiff, | Civil No. 16-916 (FLW)(DEA) |
| v. | **OPINION** |
| ADT LLC, et al., | |
| Defendants. | |

ARPERT, Magistrate Judge

This matter comes before the Court by Plaintiff Victor Fabricatore ("Plaintiff"), the business owner of Hillsborough Rare Coins ("HRC"), on a Motion for Reconsideration [ECF No. 64] of the Court's January 12, 2018 Order denying Plaintiff's Motion for leave to file a Second Amended Complaint. ECF No. 58. For the reasons set forth below, Plaintiff's Motion for Reconsideration is DENIED.

## I.  BACKGROUND AND PROCEDURAL HISTORY

The pertinent facts of this case were delineated by the Court in an Opinion issued on January 12, 2018 and are incorporated herein for the purpose of this Motion. ECF No. 57. Nevertheless, the Court will provide a brief summary of the relevant facts and procedural history. In 2006, Defendant ADT LLC ("Defendant" or "ADT") installed a burglary alarm system on HRC's premises in exchange for a fee and agreed to provide store-monitoring services, among which included contacting Plaintiff and the appropriate authorities if the alarm system was activated. However, Plaintiff alleges that he never signed a contract memorializing these obligations; instead, ADT forged his signature on a Sales Proposal/Agreement (the "2006 Agreement"). According to Plaintiff, the forged 2006 Agreement included an oppressive set of

Terms and Conditions which limited ADT's potential liability for failing to comply with its store-monitoring services obligations.

In 2014, Plaintiff voluntarily entered into a new, identical contract with ADT (the "2014 Agreement") that upgraded and converted HRC's existing burglary system to the "Pulse" system. Pursuant to its Paragraph B, ADT was required to provide the signal receiving and notification services which it previously promised to provide when the burglary system was originally installed: "If an alarm signal registers at ADT's [Customer Monitoring Center], ADT shall endeavor to notify the appropriate Police or Fire Department and the designated representative of Customer." Proposed SAC, ¶ 15 (emphasis removed). Thus, ADT's obligations under the 2014 Agreement essentially remained the same.

Because ADT allegedly failed to comply with its store-monitoring services obligations during a burglary on HRC's premises in 2015, Plaintiff filed the instant action against ADT in New Jersey Superior Court, Somerset County on December 2, 2015. On February 19, 2016, ADT filed a notice of removal to the United States District Court of New Jersey and subsequently moved to dismiss Plaintiff's Complaint. However, ADT's Motion was ultimately denied in order to provide Plaintiff with an opportunity to amend his original "bare-bones, two-count complaint," as the District Judge described. ECF. No. 22. Plaintiff then filed an eight-count First Amended Complaint, among which included a breach of contract claim and a New Jersey Consumer Fraud Act ("NJCFA") claim.

Thereafter, Defendant moved to dismiss the First Amended Complaint. On May 2, 2017, the Court granted Defendant's Motion in its entirety, with the exception of Plaintiff's breach of contract claim. However, Plaintiff was permitted to file a motion to amend in order to reassert a claim under the NJCFA, as to which the District Judge held:

> HRC, however, has made no allegations in its Amended Complaint regarding an ascertainable loss [stemming] from the alleged unconscionable practices beyond that resulting from a breach of contract. Nor has HRC alleged how a 2006 forged signature on a non-operative contract led to that loss. Therefore, we find that HRC has not sufficiently alleged facts to support all elements of a CFA claim in the pleadings.

*Hillsborough Rare Coins, LLC v. ADT LLC*, No. 16-916, 2017 U.S. Dist. LEXIS 67113, at *28 (D.N.J. May 2, 2017) (citation omitted). Thus, the District Judge specifically identified the deficiencies with Plaintiff's NJCFA claim and, in that same vein, directed him to plead the statutory elements of ascertainable loss and causation.

On September 15, 2017, Plaintiff filed a Motion for leave to file a Second Amended Complaint in which he simply realleged his NJCFA claim. The Court denied Plaintiff's Motion on procedural and substantive grounds, respectively including: (1) undue delay; and (2) failure to satisfy the NJCFA's statutory elements. As to the latter, the Court specifically held that Plaintiff's proposed pleading did not establish a causal relationship between the alleged forgery of a non-operative contract in 2006 and Plaintiff's examples of ascertainable harm, as the District Judge mandated.[1]

On December 20, 2017, ADT moved for summary judgement on the basis of the 2014 Agreement's contractual provisions, which the District Judge subsequently granted in part and denied in part. Specifically, the District Judge declined to enforce the 2014 Agreement's Exculpatory Clause and preclude Plaintiff from recovering any damages for his breach of contract claim. Rather, ADT's potential liability was capped at $1,000 in accordance with the 2014

---

[1] For purposes of completeness, the Court notes that Plaintiff's Motion for leave to file a Second Amended Complaint also sought to correct Plaintiff's business designation, as set forth in the original complaint. That portion of Plaintiff's Motion was granted, and Plaintiff subsequently filed a Second Amended Complaint which is identical to the First Amended Complaint, but for the fact that it designates Mr. Fabricatore, doing business as HRC, as the appropriate plaintiff in this action.

Agreement's Limitation of Liability Provision. Subsequent to the resolution of ADT's Motion for summary judgment, the following Text Order was entered on the docket: "in the event [that] . . . Plaintiff's Motion for Reconsideration [is denied,] this Court will issue an order remanding this matter." ECF No. 73.

Now, Plaintiff moves for reconsideration of the Motion for leave to file an amended NJCFA claim. In support, Plaintiff argues that the Court's prior finding of undue delay was inappropriate, because he filed his Motion to amend before the deadline set forth in the Court's Pretrial Scheduling Order ("PSO"). Plaintiff additionally maintains that the Court misinterpreted his amended allegations, as pled in the proposed Second Amended Complaint, sufficiently establishing a causal relationship between ADT's alleged forgery of the 2006 Agreement and the ascertainable losses which purportedly stem therefrom. Defendant opposes the Motion.

## II. ANALYSIS

### A. Standard of Review

Local Civil Rule 7.1(i) governs motions for reconsideration. *Agostino v. Quest Diagnostics, Inc.*, No. 04-4362, 2010 U.S. Dist. LEXIS 135310, at *5 (D.N.J. Dec. 22, 2010) (citation omitted). Local Civil Rule 7.1(i) permits a party to seek reconsideration by the Court of a matter which the party believes the Judge "overlooked" when it ruled on the motion. A motion for reconsideration under Rule 7.1(i) "shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge" and submitted with a "brief setting forth concisely the matter or controlling decisions which the party believes the Judge . . . has overlooked." L. Civ. R. 7.1(i).

The standard for reargument is high and reconsideration is to be granted only sparingly. *United States v. Jones*, 158 F.R.D. 309, 314 (D.N.J. 1994). A judgment may be altered or amended

under Rule 7.1(i) if the movant shows at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact to prevent manifest injustice." *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 676 (3d Cir. 1999) (citation omitted). The Court will grant a motion for reconsideration only if its prior decision overlooked a factual or legal issue that may alter the disposition of the matter. *Compaction Sys. Corp.*, 88 F. Supp. 2d at 345.

A party seeking to introduce new evidence on reconsideration bears the burden of first demonstrating that the evidence was unavailable or unknown at the time of the original hearing. *See Levinson v. Regal Ware, Inc.*, No. 89-1298, 1989 U.S. Dist. LEXIS 18373, at *3 (D.N.J. Dec. 1, 1989). Significantly, "[r]econsideration motions . . . may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of the judgment." *NL Industries, Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 533 (D.N.J. 1998) (citation omitted).

**B.     Causation**

The Court previously issued an Order denying Plaintiff's attempt to reassert a claim under the NJCFA through the following additional allegations in his proposed Second Amended Complaint:

> 64.     The forgery of the 2006 Sales Proposal/Agreement is significant because this contract governed or purported to govern the initial installation of the ADT alarm system at [Plaintiff's] Greenbrook store, and the providing of the promised monitoring and notification services. The 2014 upgrade to "Pulse" did not change the basic alarm system and ADT's original promise to notify law enforcement and [Plaintiff] if the alarm were triggered.

5

> . . . .
>
> 66. As a proximate result of the above described acts of consumer fraud, HRC has sustained an ascertainable loss. *To begin with, ADT's forgery of the original 2006 contract precluded HRC from reviewing the Terms and Conditions that ADT would later claim limited its liability for providing the agreed-upon services.* Had HRC known that ADT's position was that it had no responsibility if the alarm did not work as promised, HRC would have purchased another alarm system in 2006, and thereby avoided the losses from the 2015 burglary.

Proposed SAC, ¶¶ 64, 66 (emphasis added). Ultimately, the Court determined that these allegations were insufficient for the purpose of alleging a legally viable claim under the NJCFA. The Court, more specifically, found that the installation of the original alarm system in accordance with a non-operative 2006 Agreement was insignificant, because the 2014 Agreement was in effect when the burglary occurred. Therefore, paragraph 64 of the proposed pleading did not establish a causal relationship between the alleged forgery and any ascertainable loss. Nor was the element of causation satisfied by the emphasized language in paragraph 66. Indeed, the Court previously rejected Plaintiff's conclusory assertion, given that he failed to articulate why he was precluded from reviewing the 2014 Agreement's Terms and Conditions as a consequence of an alleged forgery in 2006.

Nevertheless, Plaintiff maintains that he has properly asserted a claim under the NJCFA. In so arguing, Plaintiff does not challenge the Court's findings in connection with the original installation of the alarm. Rather, his contentions are confined to the Court's interpretation of paragraph 66, noting: "[t]he Court overlooked the fact that Defendant's forgery of the 2006 Contract prevented Plaintiff from reviewing the terms governing the <u>original</u> installation of the alarm system[,]" *i.e.*, the 2006 Contract.[2] Brief in Support of Reconsideration, at 6. However, the

---

[2] Plaintiff's contentions in support of reconsideration are more specifically asserted than those which he originally pled in his proposed Second Amended Complaint. To the extent that Plaintiff is attempting to amend them on this Motion, he is forbidden by the applicable law. *Olson v. Ako*, 724 Fed. Appx. 160, 166 (3d Cir. 2018) ("[I]t is axiomatic that the complaint may not be

Court finds that the allegations, as originally pled in the proposed Second Amended Complaint, lack the degree of specificity which Plaintiff provides on this Motion and reasonably refer to the 2014 Agreement.

Here, the disputed language, as previously quoted, states: "ADT's forgery of the original 2006 contract precluded [Plaintiff] from reviewing the Terms and Conditions that ADT would later claim limited its liability for providing the agreed-upon services." Proposed SAC, ¶ 66. Notably, the contractual terms which ADT has relied on in this action are contained in the 2014 Agreement, among which include an integration clause stating that "[t]his Contract constitutes the entire agreement between Customer and ADT."[3] *See* 2014 Agreement. The effect of this provision precluded ADT from relying on the 2006 Agreement, which the District Judge previously described as a "non-operative" contract. *Hillsborough Rare Coins, LLC,* 2017 U.S. Dist. LEXIS 67113, at *28. Nor was ADT required to utilize the provisions contained therein, given that its summary judgment Motion was recently granted in part based solely on an interpretation of the 2014 Agreement. While not determinative, Plaintiff also failed to expressly dispute a prior opposition brief in which ADT construed Plaintiff's allegations to refer to the 2014 Agreement: "[Plaintiff's] allegation that the 2006 alleged forgery resulted in [Plaintiff] not reading the Terms and Conditions of its 2014 Contract . . . ." Defendant's Brief in Opposition to Plaintiff's Motion

---

amended" by a party's brief) (citation and quotations omitted); *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint.").

[3] As the Third Circuit has held, "a document integral to or explicitly relied upon in the complaint" may be considered under a 12(b)(6) standard, which governed Plaintiff's previous request to amend. *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (quotations and emphasis omitted). Therefore, the Court may rely on the 2006 and 2014 Agreements in examining Plaintiff's arguments, each of which form the basis of Plaintiff's NJCFA claim and are expressly referenced in Plaintiff's proposed Second Amended Complaint.

7

to Amend, at 8. Based on the totality of these circumstances, the Court finds that the previously alleged assertions which Plaintiff attempts to clarify on this Motion plausibly refer to the 2014 Agreement.

Nevertheless, the Court will exercise an abundance of caution and proceed to examine whether Plaintiff's alleged inability to review the 2006 Agreement is sufficient for the purpose of asserting a viable NJCFA claim. In that connection, Plaintiff states, "[h]ad Plaintiff known that ADT's position was that it had no responsibility if the alarm did not work as promised, [Plaintiff] would have purchased another alarm system in 2006, and thereby avoided the losses from the 2015 burglary." Proposed SAC, ¶ 66. Stated differently, Plaintiff contends that he would not have consented to the contractual provisions in the 2006 Agreement, if he was provided with an opportunity to read them. The Court finds this argument without merit.

Under the 12(b)(6) standard which previously governed Plaintiff's request to file an amended NJCFA claim, the District Court "must accept all of the complaints well-pleaded facts as true," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and refrain from considering materials "outside the pleadings." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). However, as previously noted, an exception is applicable to "certain narrowly defined types of material," including "document[s] integral to or explicitly relied upon in the complaint." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d at 287 (quotations and emphasis omitted); *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The District Court may consider those documents in determining whether an amendment is sufficiently pled and, in that same vein, need not accept a complaint's allegations if they are "contradicted by documents incorporated in the pleadings." *Muti v. Schmidt*, 96 Fed. Appx. 69, 74 n.2 (3d Cir. 2004). Nor must the District Court accept "conclusory allegations set forth in a

complaint . . . when those allegations are belied by the complaint's remaining factual allegations." *Id.* (citing *Schuylkill Energy Resources, Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)).

To the extent that Plaintiff's arguments can be construed in support of satisfying causation, he has failed to meet that statutory element under the NJCFA. As a preliminary issue, the Court emphasizes the speculative nature of Plaintiff's allegations, as he contends: "if the Plaintiff had been given the opportunity to read the terms set forth in the 2006 [Agreement], he would have contracted with a different vendor," and, in turn, avoided the losses from the 2015 burglary on HRC's premises. Brief in Support of Reconsideration, at 7 ("[I]f the Plaintiff . . . contracted with a different vendor[, he] would have . . . avoided the losses from the break-in . . . ."). However, Plaintiff presumes that different security vendors provide the services he contracted for without the protections of limited liability provisions or similar terms. Plaintiff further presumes that a different security vendor would have successfully prevented the burglary which was orchestrated through "sophisticated tools and techniques," as he admits. Proposed SAC, ¶ 19. Notwithstanding these presumptions and Plaintiff's obligation to "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (U.S. 2007), the Court need not accept his allegations based on the above cited principles.

In this regard, Plaintiff contends that he would not have consented to the 2006 Agreement's "oppressive" terms if he had "been made aware of" them, because those terms permitted ADT to "disclaim[] any liability for its agreed-upon services[.]" Brief in Support of Reconsideration, at 6, 9-10. Specifically, the oppressive terms included, *inter alia*, the 2006 Agreement's Exculpatory Clause and Limited Liability Provision:

> E. ADT SHALL BE EXEMPT FROM LIABILTY FOR LOSS, DAMAGE OR INJURY DUE DIRECTLY OR INDIRECTLY TO OCCURENCES OR

> CONSEQUENCES THEREFROM, WHICH THE SERVICE OR SYSTEM IS DESIGNED TO DETECT OR AVERT. THAT IF ADT SHOULD BE FOUND LIABLE FOR LOSS, DAMAGE OR INJURY DUE TO A FAILURE OF SERVICE OR EQUIPMENT IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $1,000, WHICHEVER IS GREATER, AS THE AGREED UPON DAMAGES AND NOT AS A PENALTY, AS THE EXCLUSIVE REMEDY.

*See* 2006 Agreement. Notwithstanding these allegations, Plaintiff subsequently entered into the 2014 Agreement which contained the same "oppressive" terms as in the 2006 Agreement. Proposed SAC, ¶ 60. Indeed, the 2014 Agreement similarly functioned to protect ADT from the potential liability arising from the services it provides, through the inclusion of an identical Exculpatory Clause and Limited Liability Provision:

> E. LIMITATIONS ON LIABILITY
> . . . .
> 2. ADT SHALL HAVE NO LIABILITY FOR LOSS, DAMAGE OR INJURY DUE DIRECTLY OR INDIRECTLY TO EVENTS, OR THE CONSEQUENCES THEREFROM, WHICH THE SYSTEM OR SERVICES ARE INTENDED TO DETECT OR AVERT . . . .
>
> 3. IF NOTWITHSTANDING THE PROVISIONS OF THIS PARAGRAPH E, ADT IS FOUND LIABLE FOR LOSS, DAMAGE OR INJURY UNDER ANY LEGAL THEORY DUE TO A FAILURE OF THE SERVICES, SYSTEM OR EQUIPMENT IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $1,000, WHICHEVER IS GREATER, AS AGREED UPON DAMAGES AND NOT AS A PENALTY, AS CUSTOMER'S SOLE REMEDY.

*See* 2014 Agreement. As evidenced by these provisions, the 2006 and 2014 Agreements are designed to operate in an indistinguishable fashion. Yet Plaintiff concedes that he voluntarily executed, and, in that connection, agreed to be bound by the 2014 Agreement's Terms and Conditions. Notably, Plaintiff's willful acceptance of the 2014 Agreement demonstrates that he "read, understood, and assented"[4] to the exact provisions which he now, inconsistently alleges he

---

4   In fact, the following language is located above the 2014 Agreement's signature line: "I acknowledge and agree to each of the following: (A) this Contract consists of six (6) pages. Before

would have rejected. *See Raiczyk v. Ocean County Veterinary Hosp.*, 377 F.3d 266, 270 (3d Cir. 2004) (quotations and citation omitted). Stated differently, Plaintiff's execution of the 2014 Agreement and the contractual provisions therein directly contradict his allegations with respect to the 2006 Agreement, *i.e.,* he would not have entered into a contract which "insulated [ADT] from any liability for failing to perform [its] contractual promises." Proposed SAC, ¶ 60. Indeed, the 2014 Agreement purported to operate in this precise manner. Therefore, the Court need not accept Plaintiff's contradicting allegations and finds that he has failed to establish a causal relationship between the alleged forgery and any ascertainable loss. *Schuylkill Energy Resources*, 113 F.3d at 417(rejecting the plaintiff's assertions on a 12(b)(6) standard, because "those assertions [were] belied by . . . the remaining factual allegations" in the amended complaint); *Rivera v. Rosenberg & Assocs., LLC*, 142 F. Supp. 3d 149, 161 (D.D.C. 2015) ("Where, as here, the complaint's factual allegations are contradicted by exhibits incorporated by reference in the complaint . . . , the Court need no longer accept as true plaintiff's version of events.") (citation omitted); *Amelio v. McCabe, Weisberg & Conway, P.C.*, No. 14-1611, 2015 U.S. Dist. LEXIS 98378, at *12-13 (W.D. Pa. July 28, 2015) ("While the court accepts all well-pleaded factual allegations in the complaint as true, it need not accept allegations that are internally inconsistent . . . ."); *Rose v. Rothrock*, No. 8-3884, 2009 U.S. Dist. LEXIS 37032, at *18-19 (E.D. Pa. April 29, 2009) (rejecting the plaintiff's allegations on a 12(b)(6) standard that he reached an oral agreement with the defendant, because that allegation was "directly contradict[ed]" by the exhibits attached to the plaintiff's complaint) (citations omitted).

---

signing this Contract, I have read, understand and agree to each and every term of this Contract, including but not limited to Paragraphs C and E of the important terms and conditions." 2014 Agreement.

Plaintiff attempts to justify his voluntary acceptance of the 2014 Agreement on the following two grounds. First, Plaintiff contends that "with the 2014 Pulse Upgrade, his 'guard was down' in reviewing the contractual terms, because he was not picking a new vendor for an original installation (as in 2006), but only upgrading an existing system." Brief in Support of Reconsideration, at 7 (citation omitted). Moreover, Plaintiff asserts that the pertinent provisions of the 2014 Agreement were concealed in "three pages of additional fine print," in font "so tiny as to be effectively hidden from view . . . ." *Id.* at 9-10. These "unconscionable" practices, as Plaintiff alleges, precluded him from noticing the 2014 Agreement's contractual terms. *Id.* at 10. The Court finds that Plaintiff's arguments are without merit.

Here, as a threshold issue, Plaintiff did not include these arguments in his previously filed Motion to Amend, the first of which is referenced from an opposition certification that he filed after the disputed entry of judgment. *Id.*, at 7. In that connection, Plaintiff's failure to previously raise these arguments forecloses his ability to present them on reconsideration for the first time.[5] *Bapu Corp. v. Choice Hotels Int'l, Inc.*, No. 7-5938, 2010 U.S. Dist. LEXIS 135844, at *6 (D.N.J. Dec. 23, 2010) (noting that a motion for reconsideration is not a proper vehicle for raising arguments which "could have been raised prior to the entry of judgment") (citation omitted).

---

[5] To the extent that Plaintiff articulated legal arguments in his previously filed Certification, the Court need not consider them for the purpose of determining whether they are properly raised on reconsideration. *Cannon v. Cherry Hill Toyota, Inc.*, 190 F.R.D. 147, 157 (D.N.J. 1999) ("Affidavits shall be restricted to statements of fact within the personal knowledge of the affiant. Argument of the facts and the law shall not be contained in affidavits. Legal arguments and summations in affidavits will be disregarded by the court . . . ."); *Coastal Group, Inc. v. Westholme Partners*, No. 94-3010, 1998 U.S. Dist. LEXIS 23740, at *17 (D.N.J. Dec. 15, 1998) ("Additionally, legal arguments raised in the Certifications but not discussed in [the plaintiff's] opposition brief will likewise be disregarded."). In any event, Plaintiff's arguments fail on the basis of futility, as further discussed *infra*.

Nevertheless, even if Plaintiff's arguments are properly brought, the Court finds that they fail on the basis of futility.

Although Plaintiff initially argues that he consented to the 2014 Agreement while his "guard was down," the previously cited law clearly establishes that the act of "signing a contract creates a 'conclusive presumption that the signor read, understood, and assented to its terms." *Raiczyk*, 377 F.3d at 270 (citation omitted). In fact, Plaintiff's failure "to read" the 2014 Agreement, altogether, would still preclude him from relying on this circumstance as a "defense to [its] binding terms . . . ." *Giaccone v. Canopius Us Ins. Co.*, 133 F. Supp. 3d 668, 674 (D.N.J. 2015) (citations omitted). An application of these well-settled principles demonstrates that Plaintiff's first argument is insufficient to justify his voluntary acceptance of the 2014 Agreement. Nor does Plaintiff's remaining argument warrant a different outcome, particularly since it was already rejected. As the District Judge previously concluded on summary judgment, "courts considering the enforceability of exculpatory provisions phrased in nearly identical language have found that such provisions were written with sufficient clarity to be enforceable." *Fabricatore v. ADT LLC*, No. 16-916, 2018 U.S. Dist. LEXIS 109951, at *28 (D.N.J. July 2, 2018) (citations omitted). Therefore, Plaintiff fails to articulate a valid reason for his acceptance of the 2014 Agreement, the provisions of which are identical to those in the 2006 Agreement. This circumstance provides an independent basis for the denial of Plaintiff's Motion.

### C.     Undue Delay

Given that Plaintiff has failed to adequately satisfy the statutory elements under the NJCFA, Plaintiff's remaining argument in support of reconsideration need not be considered. Indeed, Plaintiff has failed to sufficiently establish a causal relationship between the alleged forgery in 2006 and any ascertainable losses. Notwithstanding his inability to assert a legally viable

claim under that statute, the Court will proceed to address his contentions with respect to the prior finding of undue delay.

Specifically, Plaintiff contends that the Court "overlooked the undisputed fact" that his Motion to Amend was filed six weeks before the deadline set forth in the governing PSO. Brief in Support of Reconsideration, at 1. Plaintiff further contends that his compliance with the Court's deadline forecloses the possibility of undue delay, which finding must be reversed on this Motion. *Id*. Plaintiff finally references a prior telephone conference during which the Court directed Defendant to supplement its Rule 26 Initial Disclosures, 60 days after which Plaintiff filed his prior request to amend. The Court is not persuaded by these arguments, given that they conflate the issues of timeliness and undue delay.[6]

Although motions for reconsideration are not vehicles to "relitigate a point of disagreement between the Court and the litigant," the Court, nevertheless, holds that a motion may be denied on the basis of undue delay even when that motion is filed timely within a court-ordered deadline. *United States v. Allgyer*, No. 11-2651, 2012 U.S. Dist. LEXIS 180621, at *8 (D.N.J. Dec. 20, 2012) (citation and quotations omitted). As the District Court of Delaware succinctly explained:

> The Court's discretion to grant or deny leave to amend is not limited in such mechanistic ways. The question of whether a motion for leave to amend is timely under the scheduling order is certainly relevant to the question of whether there has been undue delay. They are not, however, the same question. Just as a motion filed after the deadline could be filed without undue delay, so too could undue delay exist when a motion is filed before the deadline.

---

[6] Although Plaintiff contends that the issue of undue delay was previously raised *sua sponte*, a motion to amend is subject to the Court's broad discretion. *Carr v. New Jersey*, No. 9-913, 2012 U.S. Dist. LEXIS 62042, at *4 (D.N.J. May 3, 2012) (citation omitted).

14

*Del. Display Grp. LLC v. Lenovo Grp. Ltd.*, Nos. 13-2108, 13-2109, 13-2112, 2016 U.S. Dist. LEXIS 21461, at *28 (D. Del. Feb. 23, 2016). Accordingly, a party's timely filing of a motion is not dispositive of whether that party engaged in undue delay.

Here, the circumstances presented support the Court's earlier finding of undue delay. Specifically, the District Judge granted Plaintiff with leave to reassert four of his previously dismissed claims. Nevertheless, Plaintiff required more than four months to reallege one claim under the NJCFA—the deficiencies of which, as pled originally, were already identified by the District Judge. Indeed, the District Judge not only directed Plaintiff to plead the statutory elements of causation and ascertainable loss, but also articulated the precise means by which to establish the latter requirement, *i.e.,* demonstrate a causal relationship between the alleged forgery in 2006 and the ascertainable loss which stemmed therefrom. Significantly, Plaintiff could have immediately addressed these deficiencies with the information which was originally available when this action was first filed, as they arose from his failure to plead the aforementioned statutory elements. Because Plaintiff's errors were merely legal in nature, he was not required to ascertain more factual evidence in support of his NJCFA claim through the discovery process. Likewise, he was not dependent on Defendant's supplemental disclosures prior to the filing of his second proposed pleading, as Plaintiff concedes that the additional information was intended to reveal "what [Defendant's] witnesses would say" and "what Defendant's version of events would be," not to assist in asserting a claim under the NJCFA. Certification of Randall Peach, Esq., at ¶ 8 (dated Jan. 26, 2018). Thus, in light of these circumstances, the Court holds that the previous finding of undue delay was proper, further warranting the denial of this Motion.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion [ECF No. 64] for reconsideration is DENIED.

An appropriate Order accompanies this Opinion.

s/ Douglas E. Arpert
DOUGLAS E. ARPERT
UNITED STATES MAGISTRATE JUDGE
